THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARIAN HAGI-MAYOW, | CASE NO. C18-0986-JCC |
| Plaintiff, | ORDER |
| v. | |
| STATE FARM FIRE AND CASUALTY COMPANY, | |
| Defendant. | |

This matter comes before the Court on Defendant's motion for partial summary judgment (Dkt. No. 13). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the motion for the reasons explained herein.

## I. BACKGROUND

On May 21, 2017, Plaintiff Marian Hagi-Mayow's home was damaged by a fire that started in the kitchen. (*See* Dkt. Nos. 1, 17-1 at 6.) Defendant State Farm Fire and Casualty Company insured Plaintiff's home at the time of the fire. (Dkt. No. 14-1.) Along with the direct loss associated with the fire, the insurance policy covers additional living expenses ("ALE"). (*Id.*) Specifically, the policy provides:

//

> **Additional Living Expense**. When a Loss Insured causes the **residence premises** to become uninhabitable, [the insurer] will cover the necessary increase in cost [the insured] incur[s] to maintain [her] standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of: (a) the time required to repair or replace the premises; (b) the time required for [the insured's] household to settle elsewhere; or (c) 24 months. This coverage is not reduced by the expiration of this policy.

(*Id.* at 3.)

If an insured and Defendant cannot agree as to the amount of loss under any of the policy coverages, the policy provides for an appraisal process to set the amount of the loss. (*Id.* at 4.) This section of the policy provides:

> **Appraisal**. If [the insured] and [the insurer] fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, [the insured] or [the insurer] can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to [the insured and the insurer], the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by [the insured] and [the insurer].

(*Id.*)

Plaintiff made a claim the day after the fire. (Dkt. No. 17-3.) The claims representative Plaintiff spoke to tried to convince Plaintiff to move out of the house, but Plaintiff said she wanted to remain in her house until her children finished the school year. (*Id.* at 15.) Defendant assigned Mark Somers as the claims adjuster for the claim. (Dkt. No. 14-2 at 3.) Plaintiff again advised Mr. Somers that she wanted to remain in her home until her children finished school on June 6, 2017. (Dkt. No. 17-3 at 13.) In June 2017, after her children finished school, Plaintiff says that she revisited the issue of moving out of her home with Mr. Somers. (Dkt. No. 17-1 at

17.) According to Plaintiff, Mr. Somers said, "I did not have a space like this for my kids to grow up. And you have a kitchen. . . . You need to stay here and deal with it."[1] (*Id.*) Plaintiff reports that, after this conversation, she was under the impression that she had to stay in her home because she would not be reimbursed for living elsewhere. (*See id.* at 17–19.) During his deposition, Mr. Somers agreed that, because of the severe damage to Plaintiff's kitchen, Plaintiff's home was uninhabitable. (Dkt. No. 17-2 at 38.)

After Defendant's initial evaluation of Plaintiff's home, Defendant estimated that the amount it would reimburse Plaintiff for the damage was about $26,000, and issued that payment on June 23, 2017. (Dkt. Nos. 17-2 at 5–7, 17-3 at 8.) Plaintiff tried to buy materials that would allow her to repair her home within that budget, but she was unable to do so. (Dkt. No. 17-1 at 7–9.) Plaintiff hired an appraiser, Bernie Williams, to prepare an estimate of the construction cost. (*Id.* at 8–9.) Mr. Williams hired a construction company, Verity & Light, which estimated that the construction cost would be $192,600. (*Id.* at 9.) Because of the discrepancy between the amount paid to Plaintiff and Verity & Light's estimate, Mr. Williams, Mr. Somers, representatives of Verity & Light, and representatives of McBride Construction (on behalf of Defendant) met at Plaintiff's home to attempt to reach a common understanding of the cost of repairs. (Dkt. No. 17-3 at 6–7.) After that meeting, McBride Construction prepared a new estimate for Defendant of $89,200. (Dkt. No. 17-2 at 11.)

In accordance with this new estimate, Defendant made another payment to Plaintiff in January 2018. (Dkt. No. 17-3 at 4–5.) However, because of the remaining difference between McBride Construction and Verity & Light's estimates, on January 9, 2018, Plaintiff exercised her right under the insurance policy to demand an appraisal of the cost of repair. (Dkt. Nos. 14-3 at 5, 16.) Plaintiff hired Kyle Grinnell at Allwest Adjusters to act as her appraiser; Defendant hired Jason Runyon at Norcross to act as its appraiser; Roger Howson was appointed as the

---

[1] Mr. Somers was referring to the home's wet bar when he said the family had a kitchen. (Dkt. No. 17-1 at 17.)

umpire. (Dkt. No. 14-3 at 5.) The appraisal award was issued on January 25, 2018, and it included a $202,414.54 award for structural repairs. (Dkt. No. 14-4 at 4.) The award also included a $25,650 award for ALE. (*Id.*) The award does not state how the ALE was calculated (*id.*), but Defendant's appraiser explained that the basis for the ALE award was the "fair market rental value for the residence for a three-month period of restoration and average overage of $250 per month for meals above typical cost of $1,000 per month for a family of four to six." (Dkt. Nos. 13 at 3–4, 14-3 at 6.)

Verity & Light began construction shortly after Plaintiff received the appraisal award from Defendant. (Dkt. No. 14-2 at 5.) However, Plaintiff did not leave her home until June 2018, when Verity & Light told her she could not remain in the home while they fixed the roof. (*Id.*) For the most part, Plaintiff and her family remained in the home from the day of the fire, May 21, 2017, to the date Verity & Light told her she had to leave in June 2018. (*See* Dkt. No. 16 at 10.) In June 2018, Plaintiff moved into an apartment with a rental rate of $1,500 or $1,600 per month, for three months. (Dkt. No. 14-2 at 6.) After that three-month period, Plaintiff moved back into her home. (*Id.*)

Plaintiff brings claims against Defendant for bad faith, negligence, breach of contract, and violation of Washington's Consumer Protection Act. (*See* Dkt. No. 1-2 at 4–7.) One of Plaintiff's claims in her complaint is that Defendant refused to relocate Plaintiff, even though she had ALE coverage under her policy. (*Id.* at 4.)

Defendant claims that it learned during discovery that Plaintiff seeks additional ALE. (Dkt. No. 13 at 4.) Plaintiff responded to discovery regarding her claims by asserting that she was entitled to additional ALE beyond that awarded in the appraisal. (*Id.*) Specifically, Plaintiff claims the following:

> Additional Living Expenses: For the time period from the fire to the date of the appraisal award, May 21, 2017 – January 25, 2018 (249 days), and for the nine month time period from the appraisal award until Plaintiff[] moved back into [her] home (prior to the completion of construction), less the three month period included in the appraisal award (net six month period post appraisal award). Damages

calculated based on the appraisal award of $285/day are $122,265.

(*Id.*) Plaintiff does not purport to have spent $122,265 on ALE. (Dkt. No. 14-2 at 6.) Defendant moves for summary judgment on the issue of ALE. (*See* Dkt. No. 13.)

## II.　DISCUSSION

### A.　Summary Judgment Legal Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is genuine if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is material if the fact "might affect the outcome of the suit under the governing law." *Id.* At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in the nonmovant's favor. *Id.* at 255.

### B.　Appraisal Award

Generally, under Washington law, an appraisal award is conclusive as to the amount of loss. *See Lloyd v. Allstate Ins. Co.*, 275 P.3d 323, 328 (Wash. Ct. App. 2012); *Bainter v. United Pac. Ins. Co.*, 748 P.2d 260, 262 (Wash. Ct. App. 1988). A party may only challenge an appraisal award on "allegations of bias, prejudice, or lack of disinterestedness on the part of either an appraiser or the umpire." *Bainter*, 748 P.2d at 262.

Defendant argues that summary judgment should be granted as to Plaintiff's claimed ALE because the appraisal award conclusively determined all ALE. (*See* Dkt. No. 13.) However, Plaintiff argues that the appraisal award is only for a three-month period, and that she is owed more ALE for a period of time that the appraisal award did not evaluate or cover. (*See* Dkt. Nos. 13 at 4, 16 at 11–21.) Plaintiff and Defendant disagreed as to the amount of damage to Plaintiff's home caused by the fire, and because of this disagreement and the resulting construction delay, Plaintiff spent over 249 days in her damaged home before construction began. (*See* Dkt. Nos. 13

at 2–4, 16 at 5–11.) Because of the disagreement, the parties asked appraisers to evaluate the "[s]cope and cost of fire damages resulting from [the] kitchen fire." (*See* Dkt. No. 17-6.) When the appraisers submitted their appraisal, the award "included a [f]air market rental val[u]e for the residence for a 3-month [period of restoration] . . . ." (Dkt. No. 17-7 at 3.) Up until construction began, over 249 days after the fire, no "period of restoration" had begun. Therefore, a genuine dispute exists as to whether the ALE in the appraisal award includes the time period before construction began. And under the plain language of the ALE provision, Plaintiff appears to be entitled to more ALE.

After construction began, Plaintiff contends that she remained in her house because she believed that she would not be reimbursed for relocation expenses. (*See* Dkt. No. 16.) She only moved out of her home when Verity & Light told her it would not start roof construction until she left. (Dkt. No. 14-2 at 5.) The roof construction began almost six months after construction began. (*Id.*) Plaintiff stayed in alternative housing for about three months, and then returned to her home. (*Id.* at 6.) Because Defendant asserts that the ALE included in the appraisal award is specifically for a three-month period (*see* Dkt. Nos. 13 at 3–4, 14-3 at 6), and because the construction time actually took at least nine months, a genuine dispute exists as to whether the appraisal award is meant to cover the additional six months of construction. A reasonable trier of fact could find, for example, that the appraisers were demonstrating to the parties how to calculate ALE for the actual period of restoration, should it exceed the three-month period. This is especially true considering the appraisers were only asked to determine the "[s]cope and cost of fire damages resulting from [the] kitchen fire." (*See* Dkt. No. 17-6.)

Therefore, a genuine dispute exists as to whether the appraisal award is conclusive as to Plaintiff's total ALE damages.[2]

---

[2] However, a genuine dispute does not exist as to whether the appraisal award is conclusive as to ALE damages for a three-month period of construction.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Dkt. No. 13) is DENIED.

DATED this 19th day of August 2019.

John C. Coughenour
UNITED STATES DISTRICT JUDGE